IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KISTINA BECK-EASLEY,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

        Defendant.

CIVIL ACTION FILE NO.

1:13-CV-02869-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied her disability

claims.  For the reasons set forth below, the court finds that the Commissioner's

decision should be affirmed.

I.      **Procedural History**

Plaintiff Kistina Beck-Easley filed applications for a period of disability,

disability insurance benefits, and supplemental security income on November 17,

2009, alleging a disability onset date of July 5, 2007. [Record ("R.") at 164-68].  After

her applications were denied initially and on reconsideration, Plaintiff requested an

administrative hearing which was held on January 12, 2012. [R. at 40-86]. On March 30, 2012, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications. [R. at 20-39]. Plaintiff requested and the Appeals Council granted review of the ALJ's decision. On June 25, 2013, the Appeals Council adopted the ALJ's findings in part and found Plaintiff not disabled. [R. at 1-18]. Having exhausted her administrative remedies, Plaintiff filed a complaint on August 29, 2013, seeking judicial review of the Commissioner's final decision. [Doc. 3]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

Plaintiff  was born on August 6, 1970, and was thirty-six years old at the time of her alleged onset of disability and forty-one years old at the time of the administrative hearing. [R. at 5, 31]. Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2011, and the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 5, 2007, the alleged onset date. [R. at 25].

The ALJ found that Plaintiff has the following impairments which are considered "severe" impairments within the meaning of the Social Security Regulations: chronic multiple sclerosis pain, fibromyalgia, cervical spine pain, chronic

2

opioid usage and obesity.  [R. at 25-26].  The ALJ found that Plaintiff does not have a mental or physical impairment or combination of impairments that meets or medically equals one of the relevant listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and made specific findings that Plaintiff's mental impairment does not meet or medically equal the criteria of listings 12.04 (affective disorders) and 12.09 (substance addiction disorders).

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a reduced range of sedentary work with the following limitations.  Plaintiff can lift 10 pounds occasionally and 5 pounds frequently.  She can stand for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.  And she can perform frequent push and pull and foot controls.  Plaintiff requires a one-hour interval sit/stand option and a hand held assistive device for uneven terrain and prolonged ambulation.  She can climb stairs occasionally but is unable to climb ladders.  Plaintiff can occasionally balance, kneel, crawl, stoop and crouch.  She is able to handle and finger frequently.  Plaintiff cannot work around hazardous machinery, at unprotected heights or on vibrating surfaces.  And Plaintiff is limited to work that involves simple, routine and repetitive work tasks or instructions, that does not require close coordination or interaction with co-workers or the general public, and that is low stress (requiring only

3

occasional decision making and occasional changes in work setting), does not require confrontational involvement with a supervisor and not production pace.  [R. at 27].

The ALJ found that a person with Plaintiff's RFC would not be able to perform her past relevant work as a home health provider, companion care person or server. [R. at 31].  Plaintiff is considered a younger individual and has at least a high school education and can speak English.  The ALJ found that transferability of skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled" regardless of her transferable skills.  [Id. (citation omitted)].  A vocational expert ("VE") testified that there are other jobs that exist in significant numbers in the state and national economy that a person with the same age, education, work experience and RFC as Plaintiff can perform.  [R. at 32].  The ALJ found that Plaintiff was therefore not under a disability from her alleged onset date, July 5, 2007, through March 30, 2012, the date of the ALJ's decision.  [Id.].

The ALJ's decision [R. at 15-27] states the relevant facts of this case as modified herein as follows:

The claimant testified that she is 5 feet 7 inches tall and weighs between 175 and 185 pounds.  She lives with her husband, three boys and her granddaughter.  She

4

completed college.  She testified that she is disabled due to her mental capacity, pain, swelling, stress, lack of ability to cope, hands swelling up and experiencing numbness of her hand.  She tries to do small things for herself and her children and can wash dishes for 5 to 10 minutes.

In January 2010, the claimant completed a report in which she stated that she was able to dress, bathe, shave and feed herself and was going to church.  (Exhibit 6E).  Six months later, the claimant completed a report stating that she does not have any activities of daily living.  (Exhibit 12E).  The claimant's friend, Sandra Bell, also completed a report in June 2010.  (Exhibit 11E).  Ms. Bell reported that she talked on the telephone or saw the claimant at least 4 to 5 times per week and that the claimant was able to feed herself and prepare light meals, do laundry with assistance, fold clothes, dust and lift baskets of clothes and was able to drive a car and go shopping for groceries and personal items.

The claimant's medical records from Comprehensive Pain Management Center, Cobb Medical Associates, the Humber Parkerson Clinic, Wellstar Kennestone Hospital, Wellstar Cobb Hospital and the Pain Solution Treatment Center reflect the

AO 72A
(Rev.8/82)

following treatment and opinions. (Exhibits 1F-33F). Dr. Dexter Tooman[1] completed an Attending Physician's Disability Statement on September 26, 2008, opining that the claimant was totally disabled due to fibromyalgia. (Exhibit 26F). Dr. Michaele Brown treated the claimant between June 19, 2008, and November 18, 2008, at Pain Solution Treatment Center and noted that, although the claimant complained of all over body pain to due to fibromyalgia, she reported improvement with home remedies such as Ben-Gay, Icy Hot and over the counter Advil and with other conservative treatment including swim therapy, a home exercise program and application of ice and heat packs. (Exhibit 1F). Dr. Brown also noted that the claimant did not have any trigger points, that she had an active range of motion, that her musculoskeletal examination revealed a normal gait and station and that the claimant's cervical and lumbar spine had normal curvature. Dr. Brown considered the claimant's mood and affect normal and appropriate to the situation. (Exhibit 1F).

Dr. Steven Gary Berger, a licensed consultative psychologist, examined the claimant on January 14, 2010. Although the claimant appeared anxious, Dr. Berger found that the claimant's thoughts were linked in a logical manner and no delusions

---

[1]The decision refers to Dr. Tooman as "Dr. Tooyan." [R. at 30 ("spelling of the name is somewhat illegible")].

AO 72A
(Rev.8/82)

were reported.  The claimant had a Global Assessment of Functioning ("GAF") score

of 55 indicating moderate symptoms.  And Dr. Berger opined that the claimant could

understand instructions although she would be slow in her task performance.  (Exhibit

4F).  In February 2010, Dr. William Meneese, a State agency psychologist, reviewed

the claimant's records and completed a Psychiatric Review Technique form and found

the claimant not disabled, and Dr. Cassandra Comer, a State agency physician,

completed a Physical RFC Assessment and found the claimant not disabled.  (Exhibits

6F, 7F).

Between July 2, 2010, and September 1, 2010, the claimant was treated at

Austell Comprehensive Pain Management for neck and back pain.  (Exhibit 12F).  The

claimant reported pain as 10/10 on a scale of 1-10 on July 2, 2010, but Dr. Preteesh

Patel observed that the claimant was able to sit comfortably on the examination table

without difficulty or any evidence of pain and that her gait was normal and that she

reported that heat, ice and medication lessen her pain.  And, on September 1, 2010, Dr.

Patel noted that the claimant had normal curvature of the lumbar spine, hypertonic

muscles and no trigger points.  [R. at 442-43].

The claimant was evaluated by Dr. Carol Glover, a psychiatrist at Wellstar Cobb

Hospital and Medical Center, on August 17, 2010, and seen a second time on

AO 72A
(Rev.8/82)

September 14, 2010.  Although the claimant presented with an anxious mood, Dr. Glover opined that the claimant's thought process was coherent, memory grossly intact and mood congruent.  And the claimant reported that Xanax makes life more tolerable and helps to lessen the symptoms of her anxiety.  (Exhibit 13F).

Dr. Paul Lance Walker, a consultative physician, examined the claimant on October 5, 2010, and found normal range of motion of her back including flexion, extension, lateral bending and lateral rotation and that she did not have any limitation with the functional use of her upper extremities.  X-rays of the lumbar and cervical spine [R. at 460] show maintained vertebral body heights and alignment and no acute fracture or dislocation of the lumbar and cervical spine.  Dr. Walker observed that the claimant walked slowly with a cane in her right hand but that she could walk in the room without a cane.  (Exhibits 14F, 15F and 16F).  And Dr. Willis Callins, a State agency medical consultant, opined on November 18, 2010, that the claimant could frequently lift and/or carry 25 pounds and occasionally lift 50 pounds as well as sit, stand and walk for 6 hours out of an 8-hour workday.  (Exhibit 20F).

On March 16, 2011, at Dallas Comprehensive Pain Management, Dr. Anantha Kamath noted normal curvature of the claimant's spine, and Dr. Kamath was unable to identify any trigger points on deep palpation of the para-vertebral muscles.  (Exhibit

8

21F). The claimant stated that her average pain was a 7/10, and Dr. Kamath noted that the claimant reported good pain relief with her medication with little to no side effects and that her ability to function was improved due to the effective pain control. [R. at 553-56]. And, in April 2011, Dr. Kamath noted that the claimant did not have any decreased lateral bending of the lumbar spine, that her heel and toe walk were normal, that reflexes were equal and symmetric and that her toes were "down-going." (Exhibit 24F).

Additional facts will be set forth as necessary during discussion of Plaintiff Beck-Easley's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering

9

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [she] is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).   Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving [her] disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.

10

At step one, the claimant must prove that she is not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. See id.

"If the claimant cannot prove the existence of a listed impairment, [she] must prove at step four that [her] impairment prevents him from performing [her] past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

11

## IV.   Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2.    The claimant has not engaged in substantial gainful activity since July 5, 2007, the alleged onset date.  (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

3.    The claimant has the following severe impairments:  chronic multiple sclerosis pain, fibromyalgia, cervical spine pain, chronic opioid usage and obesity.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  The claimant is able to lift 10 pounds occasionally and 5 pounds frequently, stand for 2 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday and can perform frequent pushing and pulling and foot controls.  The claimant requires a one-hour interval sit/stand option and a hand held assistive device for uneven terrain and prolonged ambulation.  The claimant is able to climb stairs occasionally but is unable to climb ladders.  The claimant is able to balance, kneel, crawl, stoop and crouch occasionally.  The claimant is able to handle and finger frequently. The claimant is restricted to work that does not require working around hazardous machinery, at unprotected heights or on vibrating surfaces and to work that is limited to simple, routine and repetitive work tasks or instructions, that does not require close coordination or interaction with co-workers or the general public, and that is low stress (only occasional decision making and changes in work setting), nonconfrontational involvement with supervisor and is not production pace.

6.    The claimant is unable to perform any past relevant work.  (20 C.F.R. §§ 404.1565 and 416.965).

7.    The claimant was born on August 6, 1970, and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 C.F.R. §§ 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. §§ 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled, whether or not the claimant has transferable job skills.  (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from July 5, 2007, through March 30, 2012.  (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

[R. at 23-33].

## V.    Discussion

At the first step of the sequential evaluation, the ALJ found that Plaintiff Beck-Easley has not engaged in substantial gainful activity since July 5, 2007, her alleged date of disability onset.  [R. at 25].  At the second step, the ALJ found that Plaintiff has chronic multiple sclerosis pain, fibromyalgia, cervical spine pain, chronic opioid usage

13

and obesity which are "severe" impairments within the meaning of the Social Security Regulations. [Id.]. The ALJ found at step three that Plaintiff does not have a mental or physical impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 26].

At step four, the ALJ found that Plaintiff has the RFC to perform a reduced range of sedentary work with the following limitations. She can lift 10 pounds occasionally and 5 pounds frequently, stand for 2 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday and perform frequent push and pull and foot controls. Plaintiff requires a one-hour interval sit/stand option and a hand held assistive device for uneven terrain and prolonged ambulation. Plaintiff can climb stairs occasionally but not ladders. She can balance, kneel, crawl, stoop and crouch occasionally. She cannot work around hazardous machinery, at unprotected heights or on vibrating surfaces. She is able is able to handle and finger frequently. She is limited to work that involves simple, routine and repetitive work tasks or instructions, that does not require close coordination or interaction with co-workers or the general public and that is low stress (requiring only occasional decision making and occasional changes in work setting), not production pace and that does not require confrontational involvement with a supervisor. [R. at 27]. The ALJ found that Plaintiff is not able to

14

perform her past relevant work but that there are other jobs that exist in significant numbers that an individual with the same age, education, work experience and RFC as Plaintiff can perform.  [R. at 32].  The ALJ therefore found that Plaintiff is not disabled as defined by the Social Security Act.  [Id.].

Plaintiff contends that the ALJ committed several errors and that the ALJ's decision should be reversed.  Plaintiff's first argument is that the ALJ failed to follow the "slight abnormality" standard in finding that Plaintiff's depression, anxiety and post traumatic stress disorder ("PTSD") are non-severe impairments.  Plaintiff's next argument is that the ALJ failed to properly apply the pain standard.  Plaintiff's third argument is that the ALJ made inaccurate statements with regard to the evidence cited as supporting Plaintiff's ability to work.   And Plaintiff contends that the ALJ committed reversible error by failing to give great weight to the 2007 opinion of Dr. Dexter Tooman in an Attending Physician's Statement of Disability.  [Doc. 13].  The Commissioner contends that the ALJ correctly applied the proper standards, that the ALJ's error at step five in describing the jobs identified by the VE was corrected by the Appeals Council and that substantial evidence supports the Commissioner's decision that Plaintiff is not disabled.  [Doc. 14].

### A.    Step Two Determination: Plaintiff's mental impairments

At step two of the sequential evaluation process, the claimant has the burden of showing that she has a severe impairment.  See Doughty, 245 F.3d at 1278; and see 20 C.F.R. §§ 404.1520, 416.920.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild.  An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); accord Stone v. Comm'r of Social Sec., 586 Fed. Appx. 505, 511-12 (11th Cir. 1984).  Plaintiff contends that the ALJ failed to apply this "slight abnormality" standard to Plaintiff's mental impairments and argues that substantial medical record evidence and her testimony show that her depression, anxiety and PTSD are more than slight abnormalities and are severe impairments.  [Doc. 13 at 10].

At step two, the ALJ found that Plaintiff has several severe physical impairments.  [R. at 25].  The ALJ did not discuss Plaintiff's alleged mental impairments until step three when evaluating whether Plaintiff has a mental or physical impairment or combination of impairments that meets or equals a listed impairment.

16

[R. at 26]. "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Social Sec., 382 Fed. Appx. 823, 825 (11th Cir. 2010) (citations omitted). Accord Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); Ingram v. Astrue, 2008 WL 2943287, at *6 n.10 (M.D. Fla. July 30, 2008). The finding of a single severe impairment is all that step two requires. Heatly, 382 Fed. Appx. at 824-25. Therefore, even if Plaintiff's mental impairments are severe as she alleges, because the ALJ found that Plaintiff has at least one severe impairment, the ALJ did all that was required at step two.

Plaintiff argues that the ALJ nonetheless erred by not including more severe limitations in her RFC assessment based on her depression, anxiety and PTSD. [Doc. 13 at 9]. The ALJ found, in relevant part, that Plaintiff has the RFC to perform sedentary work which "is limited to simple, routine and repetitive work tasks or instructions[,] that does not require close coordination or interactions with co-workers or the general public, and that is low stress (only occasional decision making and changes in work setting), nonconfrontational involvement with supervisor and not production pace." [R. at 27]. Plaintiff contends that, given the medical record evidence of her mental impairments and medications and her testimony of panic attacks, nausea and PTSD and that she has difficulty remembering and concentrating

17

and poor sleep due to anxiety, nightmares and PTSD, the ALJ should have included more severe limitations in her RFC such as limiting her to "less than simple, routine and repetitive work tasks or instructions." [Doc. 13 at 9-10, citing R. at 49-50, 55, 64, 280-82, 288, 351-69, 374, 447-59, 721-27, 810, 1019-20].

In support, Plaintiff discusses one of the medical records which she cites: Dr. Berger's psychological evaluation. [Doc. 13 at 9-10]. Plaintiff points out that Dr. Berger diagnosed her condition as "major depression, recurrent, mild and PTSD" with a GAF score of 55 in January 2010 and that Dr. Berger opined that Plaintiff is "able to understand instructions, but is significant (sic) limited in her ability to carry out tasks, likely able to sustain attention for short periods of time if given breaks, her task performance would be expected to be slow, likely to decompensate under highly stressful conditions, and likely to get along well with others." [Doc. 13 at 9, quoting R. at 321-22 (internal quotation marks omitted)].

However, based on the records cited by the parties in their briefs and the record as a whole, the court finds that substantial record evidence supports the limitations in the ALJ's RFC assessment. The record shows that Plaintiff was experiencing some anxiety in 2007. [R. at 280-82, 288]. But, as the ALJ found, in February 2008, Dr. Michaele Brown with Pain Solution Treatment Center noted that Plaintiff's mood and

18

affect were normal and appropriate, and the record shows that Plaintiff had normal recent, immediate and remote memory and normal language functions. [Exhibit 1F; R. at 30, 269]. Plaintiff cites records showing that she experienced some anxiety in July and November 2008 and in October and December 2009. [See R. at 374-77 (anxious over heart palpitations given mother's health history), 358-66 (anxious about facial swelling and went to ER on December 24; diagnosis - needs oral surgery), 721-24 (chest pain accompanied by anxiety and moderate elevation of systolic blood pressure), 811 ("Patient needs to learn to set boundries [sic] @ work & @ home. Sleep poor, PTSD, nightmares of wrecks")]. Shortly after the December 2009 record cited by Plaintiff, Dr. Berger evaluated Plaintiff and gave her a GAF of 55 which, as the ALJ noted, indicates moderate, not severe, problems. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013)). Dr. Berger found that Plaintiff's "thoughts were linked in a logical manner . . . no delusions [were] reported" and that she could understand instructions although her performance would be slow. [Exhibit 4F; R. at 30]. The ALJ also noted that the State agency psychological expert, Dr. William Meneese, who reviewed Plaintiff's records and completed a mental RFC form in February 2010, found that Plaintiff was "not disabled." [R. at 30; Exhibit 6F].

19

Dr. Meneese found that, although Plaintiff's alleged limits could arise from her depression, anxiety and PTSD, the medical record evidence through February 2010 including Dr. Berger's evaluation and Plaintiff's ADLs "did not reflect signs/sxs of markedly disabling mental illness." [R. at 334]. And Dr. Meneese opined that Plaintiff's allegations of mental disability were only partially credible. [Id.] Plaintiff went to the ER in April 2010 and reported not taking a prescription for Xanax, and her mood and affect were noted to be "normal." [R. at 351-53]. The ALJ found that, in August 2010, Plaintiff reported to Dr. Glover, a psychiatrist, that she had been on Xanax for 2 years and that Xanax helped lessen her symptoms of anxiety. [R. at 30; Exhibit 13F; see R. at 447-48]. Plaintiff also reported to Dr. Glover, "I'm not depressed, I'm just stressed." [R. at 447]. And Dr. Glover found that, although Plaintiff presented with an anxious mood, her thought process was coherent, her memory grossly intact and her mood congruent. [R. at 453].

The ALJ found that Dr. Kamath, who treated Plaintiff at Comprehensive Pain Management between July 2010 and March 2011, reported that Plaintiff's medication was providing good pain relief with little to no side effects, and the record reflects that Dr. Kamath reported that Plaintiff's ability to function was improved as a result of her effective pain control. [R. at 29, citing Exhibit 21F; R. at 553 ("able to perform more

activities")].   Dr. Kamath noted that Plaintiff did not have any decreased lateral bending of the lumbar spine on April 15, 2011, and that her heel and toe walk were normal, reflexes equal and symmetric, and toes "down-going."  [R. at 29; Exhibit 24F]. And Dr. Kamath noted in May, June and July 2011 that Plaintiff's mood and affect were normal.  [See R. at 642, 646, 650].

For the above reasons, the court finds that substantial medical record evidence supported the limitations that the ALJ included in Plaintiff's RFC to account for her mental impairments, that is, limiting Plaintiff to "simple, routine, and repetitive work tasks or instructions, that does not require close coordination or interaction with co-workers or the general public, and that is low stress (requiring only occasional decision making and occasional changes in work setting), nonconfrontational involvement with a supervisor, and not production pace."  [R. at 27].  The court finds that, as stated in the decision, the ALJ "account[ed] for all of [Plaintiff's mental] limitations . . . even to an extent greater than the limitations which were demonstrated in the record."  [R. at 31].  Plaintiff has not shown that the ALJ's decision should be reversed because more severe mental-function limitations should have been included in Plaintiff's RFC.

21

**B.**     **Proper application of the pain standard**

Plaintiff's second argument is that the ALJ did not properly apply the pain standard.  When a claimant seeks to establish disability through subjective testimony of her pain or other symptoms, a three (3) part "pain standard" established by the Eleventh Circuit applies.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain" or other alleged symptom.  Id.  See also 20 C.F.R. §§ 404.1529, 416.929.

The ALJ found that Plaintiff Beck-Easley suffers from several underlying chronic medical conditions.  [Doc. 13 at 11].  Therefore, Plaintiff met the first requirement of the pain standard.[2]

The ALJ then had to consider whether there was either objective medical evidence confirming the severity of Plaintiff's alleged symptoms or whether the objectively determined medical condition underlying her alleged symptoms was of

---

[2]Plaintiff argues that she also has a back pain condition [Doc. 13 at 12, citing R. at 466, 532 and 831], but an additional medical condition would not change the finding that step one of the pain standard was satisfied.

22

such severity that it could be reasonably expected to give rise to her alleged pain or symptoms.  See 20 C.F.R. §§ 404.1529, 416.929.  Plaintiff satisfies this last, third requirement to meet the pain standard because, as she argues, "even the ALJ found that 'the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.'"  [Doc. 13 at 12-13, quoting R. at 28].

Plaintiff argues that the ALJ nonetheless failed to properly apply the pain standard when he stated that Plaintiff's "'statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with'" the ALJ's RFC assessment.  [Doc. 13 at 13, quoting R. at 28, and citing Geiger v. Apfel, 2000 WL 381920 (M.D. Fla. February 9, 2000)].  In a report and recommendation to the court, the magistrate judge in Geiger held that, when the ALJ stated, "Plaintiff has a medically determinable condition that can produce the symptoms he alleges, 'but his complaints suggest a greater severity of impairment than can be shown by the objective medical evidence alone' [and] proceed[ed] to reject Plaintiff's complaints . . . as 'clearly inflated[,]'" the ALJ misapplied the pain standard by, "in effect, requiring both objective medical evidence of the severity of the condition *and* objective medical evidence of the severity of the limitation." 2000 WL 381920, at *7 (emphasis in original).  But, the court finds that, in Plaintiff Beck-

23

Easley's case, "[u]nlike <u>Gieger</u> . . ., the ALJ did not [ ] require that [Plaintiff] present objective evidence that confirmed the severity of the alleged pain" before finding that the pain standard was met.  <u>Moore v. Comm'r of Social Sec.</u>, 2009 WL 3112105, at *8 (M.D. Fla. September 28, 2009) (citation omitted).

As in <u>Moore</u>, the ALJ found that Plaintiff Beck-Easley met the pain standard. [R. at 28].  "After finding that the pain standard was met, the ALJ was required to determine the functional limitations arising from the [Plaintiff's] subjective symptoms. This is a credibility determination . . . .  If the ALJ discredits the claimant's subjective testimony, [the ALJ] 'must articulate explicit and adequate reasons for doing so.'" <u>Moore</u>, 2009 WL 3112105, at *8 (quoting <u>Foote v. Chater</u>, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  The ALJ articulated reasons for finding that the functional limitations alleged by Plaintiff "may not be entirely reliable."  [R. at 29].  And the ALJ cited substantial medical record evidence in support of finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  [R. at 28-31].  Plaintiff has not argued or shown that the ALJ failed to make a proper credibility determination.  And the ALJ's "clearly articulated credibility finding with

24

substantial supporting evidence in the record will not be disturbed by [the] court."

Foote, 67 F.3d at 1562 (citation omitted).

### C.    Whether the ALJ made inaccurate statements about the evidence

Plaintiff argues that the ALJ made inaccurate statements regarding the evidence in evaluating Plaintiff's ability to work.  [Doc. 13 at 13].  Plaintiff gives just one example of the ALJ inaccurately stating the evidence – a mistake in describing the occupations identified by the VE for a person with Plaintiff's age, education, work experience and RFC – and argues that "[this] misstatement taken as a whole, reveal[s] an inaccurate review of the record and inadequate support in the record for the ALJ's decision."  [Doc. 13 at 14, citing R. at 32].  Plaintiff's argument fails for several reasons.

Plaintiff is correct that the ALJ mistakenly listed the occupations of potato chip sorter, small products assembler and basket filler as examples of jobs that the VE testified a person with Plaintiff's age, education, experience and RFC could perform.  [See R. at 32, 76-77].  Those jobs are light, unskilled occupations.  The VE identified the unskilled occupations of buckle wire inserter, a sticker and final assembler for a person with Plaintiff's RFC to perform a reduced range of sedentary work.  Plaintiff raised the above misstatement by the ALJ when she asked the Appeals Council ("AC")

25

to review the ALJ's decision.  The AC granted review and adopted the ALJ's findings at steps 1 through 4 but found that, at step 5, the ALJ had "inadvertently cited light jobs that exceeded the established [RFC] for a reduced range of sedentary work."  [R. at 4-5].  The AC then addressed whether the VE's testimony regarding the occupations of buckle wire inserter, sticker and final assembler supported the ALJ's finding that Plaintiff is not disabled.  [R. at 5].  The AC found that the "constant handling and fingering required of buckle wire inserters and stickers exceeds the [ALJ's RFC] limitation of handling and fingering frequently" but that the occupation of final assembler can be performed by a person with the Plaintiff's age, education, work experience and RFC to perform a reduced range of sedentary work and that such jobs exist in significant numbers in Georgia and in the national economy.  [Id.].  The AC therefore found that Plaintiff is not disabled, although for different reasons than stated in the ALJ's decision.  Plaintiff's argument that the ALJ's decision should be reversed is therefore redundant and a moot issue because the AC, in effect, corrected the ALJ's misstatement and reasoning and found Plaintiff not disabled.  Plaintiff has not argued that the AC erred in making that finding.

Also, Plaintiff's reliance on Flentroy-Tennant v. Astrue, 2008 WL 876961 (M.D. Fla. March 27, 2008), [see Doc. 13 at 14], is misplaced.  In Flentroy-Tennant,

26

the court stated that its "independent review of the record as a whole, as required under

Bloodsworth, 703 F.2d at 1239, reveal[ed] that the ALJ [had] misquoted and

misconstrued the record evidence on numerous points." Flentroy-Tennant, 2008 WL

876961, at *6.[3]  Relying on Flentroy-Tennant, the claimant in Rothgeb v. Astrue, 2012

WL 3611281 (M.D. Ala. August 21, 2012), made the same argument as made by

Plaintiff Beck-Easley in this case.  "Rothgeb point[ed] to several statements by the

ALJ which he contended [were] so inaccurate that they demonstrate[d] the ALJ's

failure to comprehend or adequately consider the record as a whole[,]" and the court

addressed each specific alleged error.  Rothgeb, 2012 WL 3611281, at *6.  Unlike the

plaintiff in Rothgeb, however, Plaintiff Beck-Easley has not identified any ALJ

misstatement or mischaracterization of the evidence other than the one inaccurate

statement by the ALJ discussed above which was addressed and remedied by the

Appeals Council.  While the court has an obligation to "scrutinize the record as a

---

[3]It is unclear whether the misstatements in Flentroy-Tennant were raised by the claimant or identified by court *sua sponte*; it is also unclear whether the claimant was represented by counsel or proceeding *pro se*.  When a claimant is not represented by an attorney at the hearing, the ALJ has a "special duty [that] requires the ALJ to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' and to be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).  However, Plaintiff Beck-Easley was represented by counsel.

whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence . . . [,]" Bloodsworth 703 F.2d at 1239 (citations omitted), it is not the court's job to parse the record for evidence to make an argument or advocate for a plaintiff.

Plaintiff Beck-Easley's argument that the ALJ made inaccurate statements with regard to her ability to work is also not supported by her alleged back condition.  [See Doc. 13 at 12].  An MRI of the lumbar spine in May 2008 showed "minor broad-based annular disc bulges and minor bilateral facet hypertrophy at L4-L5 without associated central or neural foraminal stenosis [and] no evidence of focal disc herniation."  [R. at 831].  A second MRI of the lumbar spine in July 2010 showed degenerative disc disease at L5/S1 "with a small right L5-S1 foraminal disc herniation and some mild impingement upon the exiting right L5 nerve root [for which it was noted] clinical correlation [was] needed."  [R. at 532].  And Plaintiff points out that State agency examiner Dr. Lance Walker included back pain in his diagnosis in October 2010.  [R. at 466].  However, the ALJ did not misstate or mischaracterize the record when he stated that Dr. Walker's clinical observation was that Plaintiff had "normal range of motion of her back, including flexion, extension, lateral bending and lateral rotation" and that, while Plaintiff "walked slowly with a cane in her right hand, she could walk

28

in the room without a cane." [R. at 30; Exhibits 15F and 16F]. Nor did the ALJ misstate the record from Dr. Willis Callins, the State agency medical consultant who completed a Physical RFC Assessment in November 2010 and opined that Plaintiff could frequently lift and/or carry 25 pounds and occasionally lift 50 pounds as well as sit, stand and walk for 6 hours out of an 8-hour workday. [R. at 29; Exhibit 20F]. In support of that opinion, Dr. Callins found "inconsistent phys. findings widespread in [the medical record evidence]" on Plaintiff's alleged chronic MS pain and that Dr. Walker, the consultative examiner, had noted that Plaintiff's complaints of chronic MS pain were exaggerated as were Plaintiff's alleged cervical spine limitations which were mild not severe. [R. at 551].[4] Dr. Callins also found that "No MDI was established for fibromyalgia" and that "Inconsistencies between claimant's allegations and [medical record evidence ('MER')] continue to be significant, despite addition of new MER for the purpose of clarification." [Id.].

The clinical observations by Plaintiff's treating physician, Dr. Kamath, in 2011, are consistent with Dr. Callins' and Dr. Walker's opinions. As the ALJ noted, Dr.

_____

[4]See also, e.g., Dr. Walker, Exhibits 14F and 16F, R. at 465 ("Her symptoms seem exaggerated during the course of the examination . . . .") and 466 (noting "paravertebral muscle spasm in her lumbar spine [but n]o tenderness" and "inconsistent findings with straight leg raising test").

AO 72A
(Rev.8/82)

Kamath observed on March 16, 2011, that no trigger points could be identified on deep palpation of the para-vertebral muscles and that Plaintiff reported an improved ability to function on her pain control medication.  [R. at 29; Exhibit 21F; R. at 553 ("reports she is able to perform more activities because of her current medication regimen"; "admits to taking more [pain meds] than rx'd"), 554 ("She is moderately active.")]. And, in April 2011, Dr. Kamath found that Plaintiff did not have "any decreased lateral bending of the lumbar spine, that her heel and toe walk were normal, and that reflexes were equal and symmetric . . . ."  [R. at 29; Exhibit 24F].  For the above reasons and authority, the court finds that Plaintiff's third argument – that the ALJ misstated the record evidence – is not a basis for reversing the Commissioner's final decision that Plaintiff is not disabled.

### D.    Dr. Dexter Tooman

Plaintiff's last argument is that the Commissioner's decision should be reversed because the ALJ failed to give great weight to the opinion of Dr. Dexter Tooman. [Doc. 13 at 16].  The record contains a single, one page Attending Physician's Statement of Disability that Dr. Tooman completed on September 26, 2008, with a section at the bottom of the page for Plaintiff's employer to complete.  (Exhibit 26F). Dr. Tooman reported that Plaintiff had been seen monthly from July 12, 2007, through September

30

5, 2008, after an accident on July 5, 2007, for complaints of severe neck pain and mid

back and low back pain.  [R. at 718].  Under objective findings, Dr. Tooman noted

"positive orthopedic test" and "[undecipherable] findings of myospasms."  [Id.].  Dr.

Tooman opined that Plaintiff was disabled and stated that he was "unable to determine"

if Plaintiff would be able to resume work but that she was a "suitable candidate for a

rehabilitation program" although fibromyalgia might prolong her disability.  [Id.].  The

ALJ found that Dr. Tooman's statement of disability was "an issue reserved to the

Commissioner of Social Security."  [R. at 30].

Because the determination about whether a claimant has met the statutory

definition of disability is reserved to the Commissioner, a medical source's opinion that

a claimant is disabled is not controlling.  See 20 C.F.R. §§ 404.1527(d), 416.927(d).

However, the relevant regulations promulgated by the Social Security Administration

state in pertinent part:

> (2)   Generally, we give more weight to opinions from your treating
> sources, since these sources are likely to be the medical
> professionals most able to provide a detailed, longitudinal picture
> of your medical impairment(s) and may bring a unique perspective
> to the medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual
> examinations. . . .

> (i)  Generally, the longer a treating source has treated you . . . the more weight we will give to the source's medical opinion. . . .

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

A treating medical source's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)  If the treating source's opinion is not given controlling weight, then the Commissioner is required to consider the following six factors in determining the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Plaintiff argues that Dr. Tooman's treating opinion was entitled to more weight than the ALJ gave to the opinion of Dr. Lance Walker who was a consulting examining physician. [Doc. 13 at 18].[5]  And Plaintiff contends that the ALJ "failed to address the length of treatment, frequency of examination, nature and extent of the treatment

---

[5]Dr. Tooman's statement identifies Dr. Tooman as the referring physician and identifies a "Myron Lind, D.C." under "other physicians [which] have treated the patient[.]"  [R. at 718].

32

relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of Dr. Tooman when evaluating [his] opinions." [Id.].

The Eleventh Circuit has consistently held that the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner unless good cause exists to discredit these opinions. See Lewis, 125 F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel v. Comm'r of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting Phillips, 357 F.3d at 1241).

In determining the weight to give to Dr. Tooman's opinion, the ALJ was not required to address each of the above factors listed in the regulations, 20 C.F.R. §§ 404.1527(c), 416.927(c), "as long as the ALJ provide[d] 'good cause' for rejecting the treating source's medical opinion." Lawton v. Comm'r of Social Sec., 431 Fed. Appx. 830, 833 (11th Cir. 2011). The ALJ explained why she found "good cause" to reject

AO 72A
(Rev.8/82)

Dr. Tooman's opinion.  "Good cause" exists "where the doctor's opinion was not bolstered by the evidence, or the evidence supported a contrary finding."  Lewis, 125 F.3d at 1440 (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Sharfarz v. Bowen, 825 F.2d 278, 280-81 (11th Cir. 1987)).  The ALJ found that Dr. Tooman had not cited any objective medical test or other objective evidence to support his statement that Plaintiff had a "positive orthopedic test" and "[undecipherable] findings of myospasms."  The ALJ also found that Dr. Tooman's opinion was "contrary to the evidence of a whole" which the ALJ had just discussed at length and that, "[n]otably, more recent evidence indicates that the claimant can perform gainful work activity." [R. at 30, citing Exhibits 1-33].

For the above reasons, the court finds that the ALJ "articulated specific reasons for declining to give the treating physician's opinion controlling weight, and [that the ALJ's] reasons [are] supported by substantial evidence."  Forrester v. Comm'r of Social Sec., 455 Fed. Appx. 899, 902 (11th Cir. 2012).  The ALJ therefore did not err when she gave Dr. Tooman's opinion less weight than the opinion of the consulting physician, Dr. Walker.  See Winschel, 631 F.3d at 1179; Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) ("Where our limited review precludes re-weighing the evidence anew . . . , and as the ALJ articulated specific reasons for failing to give [the

treating doctor's] opinion controlling weight, we find no reversible error.") (internal citation omitted).  Remand accordingly is not warranted.

## IV.  Conclusion

For the foregoing reasons and cited authority, the court finds that the Commissioner's final decision is supported by substantial evidence and based upon proper legal standards.  It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**.

The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**SO ORDERED THIS** 26th day of March, 2015.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

35